Cory R. Laird
Lindsay A. Mullineaux
LAIRD COWLEY, PLLC
2315 McDonald Avenue, Suite 220
Missoula, MT 59801
P.O. Box 4066
Missoula, MT 59806-4066
Telephone: (406) 541-7400
Facsimile:  (406) 541-7414
Email:      claird@lairdcowley.com
            lmullineaux@lairdcowley.com

Mark M. Kovacich
Ben A. Snipes
ODEGAARD KOVACICH SNIPES, PC
P.O. Box 2325
Great Falls, MT 59403
Telephone (406) 761-5595
Telefax (406) 406-259-3232
Email:  mark@mtlawyers.com
        ben@mtlawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JEFF BECK, individually; ROBERT ODENWELLER, individually; TERRI ODENWELLER, individually; AMY WEINBERG, individually; ZAC WEINBERG, individually; ALTA VIEWS, LLC; RIVERVIEW COMPANY, LLC; and on behalf of a class of similarly situated persons and entities, | Cause No. _____ |
| | CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |
| Plaintiffs, | |

vs.

CITY OF WHITEFISH, a Montana
municipality, and DOES 1-50,

       Defendants.

COME NOW Plaintiffs and Putative Class members, demanding trial
by jury, and for their Class Action Complaint against Defendants, allege as
follows:

## **PARTIES**

1.    Plaintiffs Alta Views, LLC, and Riverview Company, LLC, are
limited liability companies that applied for building permits in the City of
Whitefish ("City" or "Defendant") and were charged impact fees for water
and wastewater services.

2.    Plaintiffs Jeff Beck, Robert Odenweller, Terri Odenweller, Amy
Weinberg, and Zac Wienberg are individuals that applied for building
permits in the City and were charged impact fees for water and wastewater
services.

3.    Plaintiffs bring this action on behalf of themselves and on behalf
of a class of similarly situated persons and entities as described herein.

4.    Defendant is a Montana municipality in Flathead County in the
State of Montana.

5.     The true names and capacities of the Defendants named herein as Does 1-50 are unknown to Plaintiffs, who therefore bring this action against said Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to state the true names and capacities of Does 1-50, when the same have been ascertained, together with further appropriate charging allegations.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages as herein alleged were caused by said Defendants' acts or omissions.  Defendants Does 1-50 are natural persons, corporations, limited liability companies, partnerships, joint ventures, governmental entities, or other legal entities who unlawfully caused or contributed to Plaintiffs' damages as herein alleged.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction and supplemental jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1367 because this is a civil action arising under the Constitution and laws of the United States and all claims in this action arising under state law are so related to claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Venue is proper in the Missoula Division of this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a municipality located in Flathead County, Montana, which is within the Missoula Division.

## FACTUAL ALLEGATIONS

8.     Impact fees are one-time charges imposed upon new development, remodels, and renovations by a governmental entity as part of the development approval process to compensate for the cost of public infrastructure required to provide services to the new developments, remodels, and renovations.  Montana law expressly authorizes local governments in Montana to charge impact fees for new development, remodels, and renovations within their jurisdictions but provides specific criteria for, and limitations on, how impact fees may be established, calculated, and imposed.  The City has been charging impact fees on new development, remodels, and renovations within city limits and conditioning issuance of building permits upon payment of such fees since 2007.

9.     On November 19, 2018, the Whitefish City Council passed and adopted Resolution No. 18-44, which set new, higher impact fee rates on new development, remodels, and renovations for, *inter alia*, water and wastewater services in the City, effective January 1, 2019.

10.    On July 15, 2019, the Whitefish City Council passed and adopted Resolution No. 19-15, which set even higher impact fee rates on new development, remodels, and renovations for water and wastewater services in the City, effective September 1, 2019.

11.    Since January 1, 2019, Defendant has been charging unreasonable, unlawful, and unconstitutional impact fees on new development, remodels, and renovations for water and wastewater services in the City.  These impact fees greatly exceed reasonable compensation for the actual impacts of new development, remodels, and renovations on water and wastewater services in the City.

12.    In the City, a building permit is required before certain development can take place on private property within city limits.  Plaintiffs are all private property owners and building permit applicants in the City who, at some point after January 1, 2019, were charged unreasonable, unlawful, and unconstitutional impact fees for water and wastewater services by Defendant as a condition for the issuance of their respective building permits.

13.    As of the commencement of this action, Defendant has not refunded Plaintiffs for these impact fees, which were not properly collected and/or spent in accordance with the law.

14.    The City has unlawfully inflated impact fee rates and overcharged for new development, remodels, and renovations in the City in a number of ways.

**Fee Rates Inconsistent with the Evidence of Actual Impacts**

15.    In July 2007, HDR Engineering Inc. ("HDR"), an engineering consulting company retained by a contractor of Defendant to develop and recommend a method for calculating impact fees to be charged by Defendant for its water and wastewater utility systems, published a report ("2007 HDR Report") to Defendant detailing its findings, conclusions, and recommendations for imposing cost-based impact fees in the City in accordance with Montana law.

16.    The 2007 HDR Report describes in detail recommended collection methods for impact fees and provides collections tables outlining what HDR determined to be the maximum water and wastewater impact fee rates Defendant may lawfully charge based upon water meter size and number of water fixture units (e.g., sink, toilet, shower, etc.) in newly developed, remodeled, or renovated buildings in the City.

17.    On August 17, 2018, FCS GROUP ("FCS"), a utility rate and fee consulting company retained by Defendant to study and provide an update on the maximum impact fee rates Defendant can lawfully charge for

the impacts of property development, including remodels and renovations, on the City's water and wastewater utility systems, published a report ("2018 FCS Report") to Defendant detailing its findings and conclusions on the maximum allowable water and wastewater impact fee rates that may be charged for a typical new single-family residence with a 3/4" sized water meter.  FCS only provided Defendant maximum allowable impact fee rates for a 3/4" sized water meter overall; it did not recommend collection methods or provide Defendant with guidance on how to calculate cost-based impact fees based upon meter size and number of fixture units.

18.    Sometime between August 17, 2018, and August 27, 2018, an official of the City used the tables included in the 2007 HDR Report to dictate and recommend updated impact fee rates by incorporating the maximum allowable impact fee rates from the 2018 FCS Report as the base impact fee rates for a 3/4" sized water meter.  In the City official's recommended collections method, the impact fee rates for different meter sizes are determined by applying the base rates for a specific sized meter and multiplying any excess fixture units, above a base level of fixture units determined for that meter size, by a cost per fixture.  Using this City official's recommended collections method, if the number of fixtures on a newly developed, remodeled, or renovated building with a 3/4" sized meter

has fixture units above the base level assigned for a 3/4" sized meter,
Defendant could charge greater than the maximum allowable fee rates
determined appropriate by FCS for a building with a 3/4" sized meter.

19.    In using the maximum allowable impact fee rates for a 3/4"
sized meter development from the 2018 FCS Report as a base impact fee
instead of a maximum, the City official's recommended collections method
ran contrary to the evidence Defendant was provided for the maximum
allowable impact fee rates it could charge to reasonably compensate it for
the actual impacts new development, remodels, and renovations have on
water and wastewater services in the City.

20.    In passing and adopting Resolution Nos. 18-44 and 19-15, the
Whitefish City Council utilized this City official's recommended collections
method in establishing and effectuating impact fee rates for water and
wastewater services in the City.  As such, Defendant has been charging
impact fee rates inconsistent with the evidence provided to it of the actual
impacts of new development, remodels, and renovations on water and
wastewater services in the City.  Defendant has been charging impact fee
rates that exceed the actual impacts new development, remodels, and
renovations have on water and wastewater services in the City since
January 1, 2019.

**Improper Fixture Unit Weighting**

21.    Since 2007, the City has calculated water and wastewater impact fee rates based upon the planned water meter size and the number of water fixture units to be added in each project of new development, including remodels and renovations, in the City.

22.    At some point in 2018, Defendant's Public Works Department altered its impact fee assessment program in such a way that water fixture unit counts on new development projects, including remodels and renovations, in the were inflated.

23.    The Rules and Regulations for the City's Water, Sewer (wastewater), and Garbage Services require that all interior plumbing and water fixtures connected to the supply or service of the City's water and/or wastewater system conform to the requirements of the International Association of Plumbing and Mechanical Officials Uniform Plumbing Code ("UPC").

24.    Defendant itself does not conform to the UPC in determining the number of water fixture units to be added in each project of new development, including remodels and renovations, in the City.  In Defendant's method for assessing impact fees, higher impact fees are charged on new development, remodels, and renovations with more water

fixture units.  The UPC lists specific water fixture categories and assigns a unit weight per category (e.g., a bathtub has a unit weight of 4, while a shower has a unit weight of 2).  However, Defendant systematically assigns certain fixtures into higher weighted (and more costly) categories than what is specified by the UPC (e.g., Defendant assigns bathtubs and showers both unit weights of 4).  Defendant also requires new development, remodels, and renovations to use larger water meter sizes than does the UPC for the added number of water fixture units.

25.    On July 21, 2021, the Whitefish City Manager acknowledged that Defendant's method for counting water fixture units is erroneous and that Defendant is overcharging in water and wastewater impact fees based upon inflated water fixture unit counts.

26.    As a result of Defendant's erroneous method for counting water fixture units in new development, remodels, and renovations, Defendant has been charging impact fee rates that exceed the actual impacts new new development, remodels, and renovations have on water and wastewater services in the City.

**Phantom, Ineligible, and Improperly Calculated Future Projects**

27.    The 2018 FCS Report initially listed a $3.5 million planned future project for the City, dubbed the South Water Reservoir ("South Water

x

pressure for South Whitefish.  The South Water Reservoir Project as
currently planned would correct an existing deficiency in water services and
would not increase capacity for future users.  As such, it cannot be lawfully
included in calculating appropriate impact fee rates.  Even so, new
development, remodels, and renovations in Whitefish continue to pay for
the South Water Reservoir Project.

30.     The 2018 FCS Report also initially listed a $4 million planned
future project for the City, dubbed the Solar Array project for the
wastewater treatment plant ("Solar Array Project").  Defendant also used
the Solar Array Project in calculating the maximum allowable impact fee
rates for a 3/4" sized water meter residence.

31.     In passing and adopting Resolution No. 19-15, the Whitefish
City Council established and effectuated impact fee rates in the City
reflecting a projected cost of the Solar Array Project of $4 million.  Although
Defendant continues to charge the increased impact fee rates, it has spent
little to no money on the Solar Array Project.  In fact, upon information and
belief, the City has scrapped the Solar Array Project entirely.

32.     A spokesperson for the Whitefish Planning Department has
stated that a feasibility study on the Solar Array Project was conducted in
late 2019 and did not produce promising results.  After this study was

published, the City stated that it had no plan to proceed with the Solar Array Project.  Additionally, the Solar Array Project, as planned, provided a replacement energy source for Defendant's wastewater treatment plant and was not needed to increase capacity for future users.  As such, it cannot be lawfully included in calculating appropriate impact fee rates.  Despite this, impact fees for new development, remodels, and renovations in Whitefish continue to pay for the Solar Array Project.

33.    The 2018 FCS Report also initially listed a $5 million planned future upgrade of the City's water treatment plant to increase capacity for future users ("Plant Upgrade Project").  Defendant used the planned upgrade in calculating the maximum allowable impact fee rates for a 3/4" sized water meter residence.  On October 29, 2018, an official of the City increased the Plant Upgrade Project's projected cost to $10 million, recalculated impact fee rates based upon this increase, and recommended to the Whitefish City Council that it pass and adopt impact fee rates based upon the increased cost.  However, the City official's calculations did not account for the additional number of new homes that would be served by an increase in capacity supported by another $5 million in upgrades to the water treatment facility.

34.    In passing and adopting Resolution No. 19-15, the Whitefish City Council established and effectuated impact fee rates in the City reflecting the projected cost of a water treatment plant upgrade at $10 million without reflecting that the cost would be spread out among more future users.  Defendant continues to charge the increased impact fee rates.  However, these rates exceed the actual impacts new development, remodels, and renovations have and will have on water and wastewater services in the City.

## Charges on Developments Not Increasing Service Demand on Public Facilities

35.    Since January 1, 2019, Defendant has charged impact fees for water and wastewater services in the City on new development, remodels, and renovations that did not involve any increase in fixture units or any other aspect of development that impact or would impact impacting service demand on water and wastewater facilities.

## CLASS ACTION ALLEGATIONS

36.    Plaintiffs restate and reallege each and every allegation of this Complaint as if fully set forth herein.

37.    This action is brought on behalf of all building permit applicants in the City who were charged impact fees for water and wastewater

services by Defendant from January 1, 2019 to the present (the "Putative Class").

38.     The Putative Class comprises more than one hundred (100) building permit applicants, and the number of members is so numerous that joinder of all members as named Plaintiffs is impracticable.

39.     There are questions of law and fact common to all members of the Putative Class.  The common questions of law and fact include, but are not limited to:

A.     Whether Defendant subjected the Putative Class to deprivations of their constitutional rights under the Fifth Amendment of the United States Constitution;

B.     Whether Defendant harmed the Putative Class by breaching statutory and common law duties it owed to the Putative Class according to Montana law;

C.     Whether Resolution No. 18-44 of the Whitefish City Council established and effectuated unlawful and unconstitutional impact fee rates in the City from January 1, 2019, to August 31, 2019;

D.     Whether Resolution No. 19-15 of the Whitefish City Council established and effectuated unlawful and unconstitutional impact fee rates in the City from September 1, 2019, to present day; and

E.    Whether the members of the Putative Class are entitled to refunds of moneys paid in impact fees to Defendant above those which are permitted under the United States Constitution and Montana law.

40.    The claims and defenses, if any, of the named Plaintiffs are typical of the claims and defenses of the Putative Class.

41.    The named Plaintiffs do not have a conflict with the Putative Class and are qualified to and will fairly and adequately protect the interests of each member of the Putative Class with whom they have a well-defined community of interest and typicality of claims, as alleged herein.  Plaintiffs acknowledge they have an obligation to the Court to make known any material relationship, conflict, or difference they may have with any Putative Class member.

42.    Defendant has acted unlawfully, unconstitutionally, and improperly in ways generally applicable to the Putative Class.  The final relief requested is appropriate based on Defendant's actions and/or inactions with respect to the Putative Class generally.

43.    The questions of law and fact common to members of the Putative Class predominate over any questions affecting only individual members.  A class action is superior to other available methods for the fair

and efficient adjudication of this controversy.  Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

44.    Absent a class action, some members of the Class will likely continue to suffer damages, and Defendant's violations of law will proceed without remedy or recourse.

45.    Plaintiffs and the Putative Class have suffered injury in fact due to overpayment for Defendant's unlawful, unconstitutional, and improper charges of impact fees on new development, remodels, and renovations for water and wastewater services in the City.

46.    Plaintiffs propose that the Court certify the Class and that they be appointed as Class representatives and their attorneys as Class counsel.  Plaintiffs' attorneys, as proposed Class counsel, are well-versed in the rules governing class-action and complex litigation regarding discovery, certification, and settlement.

47.    The facts and circumstances of this action fulfill and meet the prerequisites, requirements, and criteria of a class action in accordance with Federal Rule of Civil Procedure 23.

## FIRST CAUSE OF ACTION

## Deprivation of United States Constitutional Rights (42 U.S.C. § 1983)

48.    Plaintiffs restate and reallege each and every allegation of this Complaint as if fully set forth herein.

49.    Plaintiffs bring this First Cause of Action pursuant to 42 U.S.C. § 1983.

50.    Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

51.    The Takings Clause of the Fifth Amendment of the United States Constitution provides:  "[N]or shall private property be taken for public use, without just compensation."

52.    A local government exaction that places conditions on the development of private property passes constitutional muster only if:  (1) the exaction shares an "essential nexus" with the reasons that would allow rejection of the permit altogether; and (2) the public benefit derived from the exaction is roughly proportional to the burden imposed on the public. *Dolan v. City of Tigard*, 512 U.S. 374, 386, 391 (1994).

53.    Monetary exactions, such as impact fees, must satisfy these constitutional requirements.  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013).

54.    In conditioning grants of building permits on the payment of excessive impact fees grossly disproportionate to the actual impact of proposed developments, including remodels and renovations, and sometimes even entirely disconnected from any reason that would allow rejection of a permit, Defendant, under color of state law, subjected Plaintiffs and the other Putative Class members to deprivations of their rights under the Fifth Amendment.

55.    As a result of Defendant's actions in subjecting Plaintiffs and the other Putative Class members to deprivations of their Constitutional rights, Plaintiffs and the other Putative Class members suffered monetary damages.

56.    As a result of Defendant's actions in subjecting Plaintiffs and the Putative Class members to deprivations of their constitutional rights, Plaintiffs and the other Putative Class members are entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b)-(c).

## SECOND CAUSE OF ACTION

### Breach of Statutory Duties – Negligence *per se*

57.    Plaintiffs restate and reallege each and every allegation of this Complaint as if fully set forth herein.

58.    Defendant failed to impose impact fees that were based upon the actual cost of public facility expansion or improvements or reasonable estimates of the costs to be incurred by the City as a result of new development of private property, including remodels and renovations, in violation of Montana Code Annotated § 7-6-1602(5).

59.    Defendant failed to charge Plaintiffs and the other Putative Class members impact fees reasonably related to and reasonably attributable to the share of the cost of infrastructure improvements made necessary by the development of their private property in violation of Montana Code Annotated § 7-6-1602(7)(a).

60.    Defendant imposed impact fees exceeding a proportionate share of the costs incurred or to be incurred by the City in accommodating Plaintiffs' and the other Putative Class members' development of private property, including remodels and renovations, in violation of Montana Code Annotated § 7-6-1602(7)(b).

61.    Defendant failed to exclude costs for correction of existing deficiencies in public facilities from the impact fees it charged in violation of Montana Code Annotated § 7-6-1602(7)(c).

62.    Defendant failed to collect and expend impact fees in a way that is reasonably related to the benefits accruing to developers paying such fees in violation of Montana Code Annotated § 7-6-1603(1).

63.    Defendant failed to refund impact fees not properly collected or expended in accordance with Montana law in violation of Montana Code Annotated § 7-6-1603(1)(c).

64.    Defendant imposed impact fees for remodeling, rehabilitation, or other improvements to existing structures that did not account for increases in units that increase service demand on those structures in violation of Montana Code Annotated § 7-6-1603(5).

65.    Plaintiffs and the Putative Class are members of the class of persons Montana Code Annotated § 7-6-1601, *et seq.*, is intended to protect from the imposition of excessive impact fees that unreasonably, unlawfully, and unconstitutionally restrict the free use and enjoyment of private property.

66.    Defendant's violations of Montana Code Annotated §§ 7-6-1601, *et seq.*, constitute negligence *per se* as it breached the duties imposed upon it by Montana law.

67.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the other Putative Class members suffered monetary damages.

## THIRD CAUSE OF ACTION

## Negligence

68.    Plaintiffs restate and reallege each and every allegation of this Complaint as if fully set forth herein.

69.    Defendant undertook specific action to impose impact fees on new development of private property, including remodels and renovations, in the City.

70.    In undertaking the action to impose impact fees, the City assumed a duty to do so reasonably and in accordance with Montana law and the United States Constitution.

71.    Defendant breached its duty when it failed to act with reasonable care and in accordance with Montana law and the United States Constitution by calculating, imposing, and enforcing excessive, unlawful, and unconstitutional impact fee rates for those developing private property in the City.

72.    As a direct and proximate result of Defendant's negligence and unlawful conduct, Plaintiffs and the other Putative Class members suffered monetary damages.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation

73.    Plaintiffs restate and reallege each and every allegation of this Complaint as if fully set forth herein.

74.    Defendant represented to Plaintiffs and the other Putative Class members that it had the authority to charge them water and wastewater impact fees at certain rates exceeding those which would reasonably compensate Defendant for the actual impacts Plaintiffs' new developments, remodels, and renovations have on water and wastewater services in the City.

75.    Defendant's representations were untrue; it did not, in fact, have authority to charge impact fees at the rates charged.

76.    Defendant made the representations to Plaintiffs and the other Putative Class members without any reasonable ground for believing them to be true.

77.    Defendant made the representations to Plaintiffs and the other Putative Class members with the intent to induce Plaintiffs and the Putative Class to rely on them.

78.    Plaintiffs and the other Putative Class members were unaware of the falsity of Defendant's representations and acted in justifiable reliance upon the truth of the representations by paying the excessive impact fees.

79.    As a direct and proximate result of their reliance on Defendant's misrepresentations, Plaintiffs and the other Putative Class members suffered monetary damages.

## FIFTH CAUSE OF ACTION

## Declaratory Relief

80.    Plaintiffs restate and reallege each and every allegation of this Complaint as if fully set forth herein.

81.    Plaintiffs bring this Fifth Cause of Action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*  By reason of the foregoing allegations, a justiciable controversy exists between Plaintiffs and Defendant.

82.    Plaintiffs seek a declaration of rights and other legal relations with respect to their entitlement to refunds of impact fees unlawfully

charged to them by Defendant.  Plaintiffs seek declarations including, but not limited to, the following:

      A.    Resolution No. 18-44 of the Whitefish City Council established and effectuated unlawful and unconstitutional impact fee rates in the City from January 1, 2019, to August 31, 2019;

      B.    Resolution No. 19-15 of the Whitefish City Council established and effectuated unlawful and unconstitutional impact fee rates in the City from September 1, 2019, to present day; and

      C.    Plaintiffs and the other Putative Class members are entitled to refunds of any moneys paid in impact fees charged by the City above those that are permitted under the United States Constitution and Montana law.

83.    Plaintiffs request that this Court set aside all Resolutions of the Whitefish City Council that effected or currently effect unlawful and unconstitutional impact fee rates in the City.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Putative Class, pray for judgment in their favor and seek relief against Defendant as follows:

1.      An order from this Court certifying the Putative Class as the Class and appointing Plaintiffs as Class representatives and their undersigned attorneys as Class counsel;

2.      A declaration by this Court that:

A.      Resolution No. 18-44 of the Whitefish City Council established and effectuated unlawful and unconstitutional impact fee rates in the City from January 1, 2019, to August 31, 2019;

B.      Resolution No. 19-15 of the Whitefish City Council established and effectuated unlawful and unconstitutional impact fee rates in the City from September 1, 2019, to present day; and

C.      Plaintiffs and the other Putative Class members are entitled to refunds of any moneys paid in impact fees to Defendant above those that are permitted under the United States Constitution and Montana law;

3.      An order from this Court setting aside all Resolutions of the Whitefish City Council that effected or currently effect unlawful and

unconstitutional impact fee rates in the City and prohibiting the City from continuing to charge unlawful and unconstitual impact fees;

4.     Compensation for the unlawful, unconstitutional, and improper impact fees Plaintiffs and the other Putative Class members paid as alleged herein;

5.     Pre-judgment interest;

6.     Reasonable attorneys' fees as provided for under 42 U.S.C. 1988(b), including expert fees as provided for in 42 U.S.C. 1988(c); and

7.     Any such further relief as this Court deems just and proper.

DATED this 24th day of February, 2022.

_/s/ Cory R. Laird_
Attorneys for Plaintiffs and
Putative Class


_/s/ Mark M. Kovacich_
Attorneys for Plaintiffs
and Putative Class