IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JEFF BECK, individually;<br>AMY WEINBERG, individually;<br>ZAC WEINBERG, individually;<br>ALTA VIEWS, LLC; RIVERVIEW<br>COMPANY, LLC; and on behalf of<br>a class of similarly situated persons<br>and entities,<br><br>        Plaintiffs,<br><br>vs.<br><br>CITY OF WHITEFISH, a Montana<br>municipality, and DOES 1-50,<br><br>        Defendants. | CV 22-44-M-KLD<br><br><br>ORDER |
| CITY OF WHITEFISH, a Montana<br>municipality,<br><br>        Third-Party Plaintiff,<br><br>vs.<br><br>FINANCIAL CONSULTING<br>SOLUTIONS GROUP, INC.,<br><br>        Third-Party Defendant. | |

This matter comes before the Court on Defendant City of Whitefish's ("the

City") Motion for Judgment on the Pleadings (Doc. 26) under Federal Rule of

Civil Procedure 12(c). The above named Plaintiffs are individuals and limited liability companies that applied for building permits in the City and were charged impact fees for water and wastewater services. Based on the pleadings, the City seeks judgment on Plaintiffs' First Cause of Action, which alleges that, under 42 U.S.C. § 1983, the City's impact fees amount to a Fifth Amendment Taking. For the reasons set forth below, the City's motion is denied.

## I.  Background[1]

"Impact fees" are charges imposed upon new development, remodels, and renovations by a governmental entity as part of the development approval process "to fund the additional service capacity required by the development." Mont. Code Ann. § 7-6-1601(3), (5)(a). Montana law authorizes local governments to charge impact fees, and provides criteria for, and limitations on, how impact fees may be established, calculated, and imposed. *See* Mont. Code Ann. § 7-6-1602. In Montana, the amount of the impact fee must be reasonably related and proportionate to the new development's share of the cost of the infrastructure improvements. Mont. Code Ann. § 7-6-1602(7)(a), (b).

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint, evidence on which the Complaint necessarily relies, and court documents of which this Court may take judicial notice.

The City has been charging impact fees since 2007. (Doc. 1, ¶ 8). On November 19, 2018, the Whitefish City Council ("City Council") adopted Resolution No. 18-44, which increased impact fee rates for water and wastewater services charged as a precondition to receiving a building permit within the City limits, effective January 1, 2019. (Doc. 1, ¶¶ 9, 12). On July 15, 2019, the City Council adopted Resolution No. 19-15, which again increased impact fee rates, effective September 1, 2019. (Doc. 1, ¶ 10).

On February 24, 2022, Plaintiffs sued the City, claiming the impact fees mandated by the Resolutions are unlawful takings in violation of the Fifth Amendment to the United States Constitution (Count I), as well as asserting claims against the City for negligence per se (Count II), negligence (Count III), and negligent misrepresentation (Count IV) under state law. (Doc. 1).

First, Plaintiffs assert that by misapplying maximum fee recommendations made in two third-party reports, one by an engineering consulting company retained in 2007 and the other an updated report by a separate utility rate and fee consulting company in 2018, the Resolutions ostensibly permitted the City to charge greater than the maximum allowable fee rates calculated by the consulting companies. (Doc. 1, ¶¶ 15–19). Therefore, Plaintiffs allege the City has been charging inflated impact fee rates, inconsistent with the actual impacts of new development on water and wastewater services in the City. (Doc. 1, ¶¶ 20, 22).

3

Additionally, Plaintiffs allege that because the 2018 impact fee rates in Resolution No. 19-15 reflected anticipated costs related to two future water and wastewater- related projects that have since been "redefined" or "scrapped" entirely, the City cannot lawfully include these project costs in calculating appropriate impact fee rates. (Doc. ¶¶ 27–32).

Lastly, Plaintiffs allege that Resolution No. 19-15 illogically established impact fee rates reflecting the projected cost of a $10 million water treatment plant upgrade without accounting for the additional new homes that would result from the capacity upgrades, effectively spreading out the burden among more future users. (Doc. 1, ¶¶ 33–34).

Plaintiffs seek declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* (Count V), including declarations that the City's impact fee resolutions are unlawful and should be set aside, and that Plaintiffs are entitled to refunds of any money paid in impact fees in excess of those permitted under the United States Constitution and Montana law. (Doc. 1, ¶ 81–83).

The City timely filed this Motion for Judgment on the Pleadings, asserting that Plaintiffs' allegations do not constitute a taking as a matter of law, and absent a valid takings claim, the Court lacks subject matter jurisdiction over Plaintiffs' other claims. (Doc. 26).

4

## II.  <u>Legal Standard</u>

A failure to state a claim defense may be raised by a motion for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c), (h)(2)(B). A motion under Rule 12(c) operates in the same way as a motion to dismiss under Rule 12(b)(6) by challenging the sufficiency of the pleadings. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In considering a motion for judgment on the pleadings, the court must accept as true "all allegations of fact by the party opposing the motion" and construe them "in the light most favorable to that party." *General Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "A judgment on the pleadings is a decision on the merits," *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir. 1990), and is only appropriate when "there is no issue of material fact in dispute,

and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

## III.  <u>Discussion</u>

### A. Pleading Requirements

As "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" an "imperfect statement of the legal theory supporting the claim asserted" is not fatal to a pleading if the defendant is otherwise sufficiently informed of the factual basis for the complaint. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories." (Emphasis in original)).

"Whether a suit arises under the laws of the United States must be determined from the plaintiff's complaint, but the lack of proper reference to federal law is not controlling." *L.B. v. United States*, No. CV 18-74-BLG-SPW-TJC, 2020 WL 2736202, at *3 (D. Mont. May 6, 2020), *report and recommendation adopted sub nom. L.B. v. United States, Bureau of Indian Affs.*, No. CV 18-74-BLG-SPW, 2020 WL 2732074 (D. Mont. May 26, 2020) (citing *N. Am. Phillips v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir. 1978)); *Western Org. of Res. Councils v. Bernhardt*, 412 F. Supp. 3d 1227, 1235 (D. Mont.

2019) ("[A] complaint is only required to contain a factual basis for its claim, Fed. R. Civ. P. 8(a)(2), not outline a complete legal theory.").

Plaintiffs allege that because the cost of the water and wastewater impact fees the City charges for new development, remodels, and renovations greatly exceeds the actual impacts that new development has on the City's water and wastewater services and facilities, the over-charge amounts to an illegal taking of their property. Pursuant to 42 U.S.C. § 1983, Plaintiffs' First Cause of Action alleges a deprivation of constitutional rights under the Fifth Amendment of the United States Constitution. (Doc. 1, ¶ 54). Plaintiffs' Complaint characterizes their claim as an unconstitutional "monetary exaction," specifically citing the "Takings Clause" and the following legal standard for unconstitutional exactions as articulated by the Supreme Court in *Dolan v. City of Tigard*, 512 U.S. 374, 386, 391 (1994):

> A local government exaction that places conditions on the development of private property passes constitutional muster only if: (1) the exaction shares an "essential nexus" with the reasons that would allow rejection of the permit altogether; and (2) the public benefit derived from the exaction is roughly proportional to the burden imposed on the public.

(Doc. 1, ¶¶ 51–53).

In its Brief in Support of its Motion for Judgment on the Pleadings, the City argues that Plaintiffs failed to state a valid takings claim because in *McClung v. City of Sumner*, 548 F.3d 1219 (9th Cir. 2008), the Ninth Circuit held the "essential

nexus" and "rough proportionality" standard from *Dolan* and a related case, *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), referred to as the "*Nollan/Dolan*" standard, applies only to individualized, adjudicative land-use decisions, not legislative, generally applicable development ordinances like the ones at issue in this case. (Doc. 27, at 6). In its Reply brief, the City further contends that Plaintiffs' Complaint lacks facts to support a taking under any legal theory, and in particular, the Complaint fails to properly assert a substantive due process claim, which Plaintiffs argue for in their Response brief, because that claim arises from a separate constitutional clause under the Fifth Amendment.

With the above principles in mind, the Court will now consider whether Plaintiffs' Complaint sufficiently alleges facts to support a cognizable claim, under any legal theory.

### B. Takings

The Takings Clause of the Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that the government may not take private property for public use without just compensation. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005); *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978). The Supreme Court has stated the Takings Clause does not prohibit the taking of public property, but by securing compensation in the event of a taking, its purpose is to bar the

government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Lingle*, 544 U.S. at 536 (citing *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

Takings claims are examined under one of four legal theories: (1) *per se* takings resulting in the permanent physical invasion of property; (2) *per se* "total regulatory takings" that completely deprive an owner of all economically beneficial use of property; (3) regulatory takings governed by *Penn Central* standards; and (4) land-use exactions violating the standards set forth in *Nollan* and *Dolan*. *Lingle*, 544 U.S. at 538; *McClung*, 548 F.3d at 1225.

Physical appropriations constitute the "clearest sort of taking," and are assessed "using a simple, *per se* rule: The government must pay for what it takes." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). It is well established that, generally, "taxes and user fees . . . are not takings." *Koontz v. St. John's River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013). "[T]he obligation to pay money in the tax and government services user fee context is not generally compensable under the Fifth Amendment because taxes and user fees are collected in exchange for government benefits to the payor." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1296 (9th Cir. 2022), *cert. denied*, 142 S. Ct. 2777 (2022). However, the due process protections of the Fifth Amendment may apply when "a land-use permitting charge denominated by the government as a 'tax' becomes 'so

arbitrary . . . that it was not the exertion of taxation but a confiscation of property.'" *Koontz*, 570 U.S. at 617 (citing *Brushaber v. Union Pacific R. Co.*, 240 U.S. 1, 24–25 (1916), rejecting a taxpayer's claim that the retroactive application of tax rates was so arbitrary as to constitute a taking); *Lingle*, 544 U.S. at 548–49 (J. Kennedy, concurring) ("The failure of a regulation to accomplish a stated or obvious objective would be relevant to that inquiry.").

The Ninth Circuit has also expressly held that "in certain circumstances . . . money can be the subject of a taking." *Ballinger*, 24 F.4th at 1295. *See e.g. Brown v. Legal Found. of Wash.*, 538 U.S. 216, 223–24 (2003) (interest accrued from lawyers' trust accounts); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980) (interest accrued in interpleader funds); *Armstrong*, 364 U.S. at 48 (seizure of liens). But the court has distinguished the above cases from those where the government "merely imposes an obligation on a party to pay money on the happening of a contingency, which happens to be related to a real property interest, but does not seize a sum of money from a specific fund." *Ballinger*, 24 F.4th at 1294 (citing *McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010) (internal quotation marks omitted)). In *Ballinger*, the Ninth Circuit concluded that where a city's ordinance "imposes a general obligation to pay money and does not identify any specific fund of money . . . it does not effectuate an unconstitutional *physical* [or per se] taking." 24 F.4th at 1295 (emphasis added).

The Supreme Court has stated that *Nollan* and *Dolan* involve a "special application" of the well-settled "unconstitutional conditions" doctrine, which prohibits the government from requiring a person to give up a constitutional right, including the right to receive just compensation when private property is taken for public use, "in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Koontz*, 570 U.S. at 604; *Dolan*, 512 U.S. at 385. "*Nollan* and *Dolan* both involved dedications of property so onerous that, outside the exactions context, they would be deemed per se physical takings." *Lingle*, 544 U.S. at 547. The rule from these cases provides that the government "may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz*, 570 U.S. at 599. Thus, the *Nollan/Dolan* "essential nexus" and "rough proportionality" standard seeks to balance responsible land-use policy, where "landowners internalize the negative externalities of their conduct," while preventing the government from "engaging in out-and-out extortion that would thwart the Fifth Amendment right to just compensation" in land-use permitting. *Koontz*, 570 U.S. at 605–06 (internal quotations and citations omitted).

In *Koontz*, the United States Supreme Court extended the application of the *Nollan/Dolan* test to monetary exactions, finding the government's attempt to

condition a development permit on requiring the landowner to fund offsite

mitigation measures was the "functional equivalent" of a typical land use exaction

governed by the *Nollan/Dolan* standard. 570 U.S. at 612. The Court noted "[a]

predicate for any unconstitutional conditions claim is that the government could

not have conditionally ordered the person asserting the claim to do what it

attempted to pressure that person into doing," and reasoned that "if the government

had directly seized the easements it sought to obtain through the permitting

process, it would have committed a per se taking." *Koontz*, 570 U.S. at 612.

Notably, the Court in *Koontz* expressly did not address the question of whether

"the government can commit a *regulatory* taking by directing someone to spend

money." *Koontz*, 570 U.S. at 614 (emphasis in original).

In *Penn Central*, the Supreme Court acknowledged there was no "set

formula" for evaluating regulatory takings claims. 438 U.S. 104, 124 (explaining

that a regulatory taking includes a fact-specific determination that "justice and

fairness require that economic injuries caused by public action be compensated by

the government, rather than remain disproportionately concentrated on a few

persons"). Under the *Penn Central* test, when considering if a regulation has gone

"too far," courts engage in an "essentially ad hoc, factual inquiry," balancing

factors such as the economic impact of the regulation on the claimant, its

12

interference with reasonable investment-backed expectations, and the character of the government action. *Penn Central*, 438 U.S. at 124.

In this case, Plaintiffs allege that, in conditioning grants of building permits on the payment of excessive impact fees grossly disproportionate to the actual impact of proposed developments, the City has subjected Plaintiffs to deprivations of their rights under the Fifth Amendment. (Doc. 1, ¶ 54). To support their claim, Plaintiffs allege a City building permit is conditioned on Plaintiffs paying impact fees that "greatly exceed reasonable compensation for the actual impacts of new development, remodels, and renovations" (Doc. 1, ¶ 11) because the fee calculations have been arbitrarily inflated (Doc. 1, ¶¶ 22, 33–34) and are inconsistent with the evidence of the actual impacts of new development to the City, including costs related to "redefined" and "scrapped" projects (Doc. 1, ¶¶ 20, 27–32). Plaintiffs further allege City officials were aware the City's erroneous method for counting water fixture units had resulted in overcharging impact fees (Doc. 1, ¶ 25), but the City has not refunded Plaintiffs for these allegedly unlawful fees (Doc. 1, ¶ 13).

The City primarily takes issue with Plaintiffs' reference in the Complaint to the "essential nexus" standard set forth in *Dolan*. Relying on *McClung* and its progeny of lower court decisions that were all decided before the Ninth Circuit's decision in *Ballinger*, the City argues that because the impact fees at issue in this

13

case derive from legislative ordinances, and because the impact fees are uniformly calculated based on a framework specified in the ordinance rather than discretionary decisions applied to individual landowners, as a matter of law, they cannot constitute a taking under *Nollan/Dolan*, and therefore, Plaintiffs fail to state a valid takings claim.

The Court disagrees that a monetary exaction analysis under the *Nollan/Dolan* standard is inapplicable as a matter of law. The Ninth Circuit recently recognized that, while the Supreme Court has "limited the scope of exactions claims" to administrative or adjudicative land-use decisions, "the doctrine barring unconstitutional conditions is broader than the exactions context." *Ballinger*, 24 F.4th at 1298–99. In *Ballinger*, the Ninth Circuit expressly declined to follow the lower court's holding that determined, as a matter of law, generally applicable legislation could never be an unconstitutional exaction. 24 F.4th at 1299–30 (holding instead that because the ordinance at issue in that case did not "conditionally grant or regulate the grant of a government benefit, such as a permit," it did not fall under the unconstitutional conditions umbrella). *Contra Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 571–72 (N.D. Cal. 2019). The court suggested that "any government action, including administrative and legislative, that conditionally grants a benefit, such as a permit, [could] supply the basis for an exaction claim rather than a basic takings claim." *Ballinger*, 24 F.4th at

14

1299 (citing *Cedar Point Nursery*, 141 S. Ct. at 2072). *See e.g.*, *Com. Builders of N. Cal. v. City of Sacramento*, 941 F.2d 872, 875 (9th Cir. 1991) (applying exactions analysis to a legislative ordinance conditioning nonresidential building permits upon the payment of a fee intended to offset the burdens on the city caused by low-income workers moving to the area to fill jobs created by the project in question).

Therefore, under the pleading standards applicable to a Rule 12(c) motion for judgment on the pleadings, the City has not established that, as a matter of law, Plaintiffs' takings claim necessarily fails under any legal theory. Accordingly, the Court finds the well-pleaded facts in the Complaint, taken as true, establish the City is sufficiently on notice of Plaintiffs' takings claim.

## C. Substantive Due Process

The Court agrees with the City that Plaintiffs' Complaint does not sufficiently allege a violation of due process. As the City points out, a takings inquiry is separate and distinct from a due process claim. *See e.g., Lingle*, 544 U.S. at 543 ("[I]f a government action is found to be impermissible . . . that is the end of the inquiry. No amount of compensation can authorize such action. . . . Whatever the merits of that claim, it does not sound under the Takings Clause."). In fact, Plaintiffs quote the above language from *Lingle* in their Response to the City's

Motion for Judgment on the Pleadings while still characterizing their substantive due process claim as another takings "legal standard." (Doc. 28, at 16–17).

Boiled down, Plaintiffs' federal legal claim alleges the water and wastewater impact fees imposed on new development by the City violate the Fifth Amendment because the fees are "so arbitrary as to constrain to the conclusion that it [is] not the exertion of [impact fees] but a confiscation of property." *Brushaber*, 240 U.S. at 24. However, Plaintiffs' Complaint is entirely void of any reference to due process. Therefore, to the extent that Plaintiffs now contend their due process rights were violated, they have not sufficiently pled an independent substantive due process claim that would provide adequate notice to the City under the federal pleading standards. As such, that claim is not currently before the Court.

## IV.   <u>Conclusion</u>

For reasons discussed above, the Court concludes that Plaintiffs have sufficiently alleged a cognizable violation of the Takings Clause and the City has failed to show it is entitled to judgment as a matter of law. Accordingly,

IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings (Doc. 26) is DENIED.

DATED this 27th day of January, 2023.

Kathleen L. DeSoto
United States Magistrate Judge

16