IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JEFF BECK, individually; AMY WEINBERG, individually; ZAC WEINBERG, individually; ALTA VIEWS, LLC; and on behalf of a class of similarly situated persons and entities,<br><br>       Plaintiffs,<br><br>vs.<br><br>CITY OF WHITEFISH, a Montana municipality, and DOES 1-50,<br><br>       Defendants. | CV 22-44-M-KLD<br><br><br>ORDER |
| CITY OF WHITEFISH, a Montana municipality,<br><br>       Third-Party Plaintiff,<br><br>vs.<br><br>FINANCIAL CONSULTING SOLUTIONS GROUP, INC.,<br><br>       Third-Party Defendant. | |

The above-named Plaintiffs bring this putative class action challenging the legality of water and wastewater impact fees imposed by the City of Whitefish ("the City") as a condition of obtaining building permits within city limits. This

matter comes before the Court now on Plaintiffs' Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Doc. 39), which has been fully briefed and argued. For the reasons discussed below, Plaintiffs' motion is granted.

## I.   <u>Background</u>

Impact fees are charges "imposed upon development by a governmental entity as part of the development approval process to fund the additional service capacity required by the development." Mont. Code Ann. § 7-6-1601(5)(a). The City has been charging impact fees on new development, remodels, and renovations within Whitefish city limits and conditioning issuance of building permits upon payment of impact fees since 2007. (Doc. 1 at ¶ 8). On November 19, 2018, the Whitefish City Council ("City Council") adopted Resolution No. 18-44, which increased impact fee rates for water and wastewater services in the City, effective January 1, 2019. (Doc. 1 at ¶¶ 9, 12; Doc. 40-1). On July 15, 2019, the City Council adopted Resolution No. 19-15, which again increased impact fee rates, effective September 1, 2019. (Doc. 1 at ¶ 10; Doc. 40-2).

Plaintiffs commenced this action against the City on February 22, 2022, asserting federal constitutional and state law challenges to impact fees imposed by the City pursuant to Resolutions 18-44 and 19-15 ("the Resolutions"). Plaintiffs identify themselves as private property owners who applied for building permits in

the City and, at some point after January 1, 2019, were charged impact fees for water and wastewater services by the City as a condition for the issuance of their respective building permits. (Doc. 1 at ¶ 12). Plaintiffs claim the City has unlawfully inflated impact fee rates and overcharged for new development, remodels, and renovations in three primary ways. (Doc. 1 at ¶ 14).

First, in what the Court will refer to as Plaintiffs' "report-based theory," Plaintiffs allege the City misapplied maximum impact fee recommendations in two third-party reports, and as a result has been charging impact fee rates that are inconsistent with evidence of the actual impacts of new development, remodels, and renovations on water and wastewater services. (Doc. 1 at ¶¶ 15-20). In July 2007, HDR Engineering, an engineering consulting company retained by the City to develop and recommend a method for calculating impact fees, published a report ("HDR Report") with tables outlining recommended maximum water and wastewater impact fee rates based on water meter size and the number of water fixture units in newly developed, remodeled, or renovated properties. (Doc. 1 at ¶¶ 15-16). In August 2018, Third-Party Defendant Financial Consulting Group ("FCS Group"), a utility rate and fee consulting company retained by the City to provide updated maximum impact fee recommendations, published a report ("FCS Report") detailing its findings and conclusions on the maximum allowable water

and wastewater impact fee rates that may be charged for a typical new single-family residence with a 3/4" sized water meter. (Doc. 1 at ¶ 17).

The Resolutions that are the subject of this lawsuit implement a collections method pursuant to which the City determines impact fee rates for different water meter sizes by applying the base rates for a specific sized meter and multiplying any excess fixture units, above a base level of fixture units determined for that meter size, by a cost per fixture. (Doc. 1 at ¶ 18). Plaintiffs claim that when the City adopted this collections method, however, it misapplied the maximum impact fee rates recommended in the FCS Report, using them instead as the base impact fee rates for a 3/4" sized water meter. (Doc. 1 at ¶ 19). As a result, Plaintiffs assert, since January 1, 2019, the City has been charging inflated impact fee rates that are inconsistent with the evidence provided to it and exceed the actual impacts of new development on water and wastewater services in the City. (Doc. 1 at ¶ 20).

Second, in what the Court will refer to as Plaintiffs' "improper fixture unit weighting theory," Plaintiffs allege the City systematically assigns certain water fixtures into higher weighted and more costly water fixture categories than what is specified by the International Association of Plumbing and Mechanical Officials Uniform Plumbing Code ("UPC"). As a result of the City's erroneous method for counting water fixture units, Plaintiffs assert, the City has been charging impact fee rates that exceed the actual impacts new development, remodels, and renovations

4

have on water and wastewater services in the City. (Doc. 1 at ¶¶ 21-26). The City has admitted that, with regard to single head standalone showers, its method for counting water fixtures is erroneous and it is overcharging impact fees based on inflated water fixture unit counts. (Doc. 5 at ¶ 25). The City is currently in the process of conducting an internal audit to identify affected properties and determine the amount of any refunds due. (Doc. 119-1).

Third, in what the Court will refer to as Plaintiffs' "project-based theory," Plaintiffs allege that the City unlawfully included the anticipated cost of three water and wastewater-related projects in calculating the impact fee rates implemented by Resolution 19-15. (Doc. 1 at ¶¶ 27-34). Plaintiffs assert that two of the projects – the South Water Reservoir Project and the Solar Array Project – have since been "redefined" or "scrapped" entirely. (Doc. 1 at ¶¶ 29, 31). Plaintiffs further allege that the City included the projected cost of a multi-million-dollar water treatment plant upgrade without accounting for the additional new homes that would be served by the capacity upgrade. Because the City's impact fee rates fail to reflect that the cost of the water treatment plant upgrade will be spread out among more future users, Plaintiffs assert, the rates exceed the actual impacts of new development on water and wastewater services. (Doc. 1 at ¶¶ 33-34).

As clarified in subsequent briefing and at oral argument, Plaintiffs' theory is that these projects never should have been part of the impact fee charges

implemented by Resolution 19-15 in the first place because the projects were either ineligible for inclusion as unrelated to development impacts, or far too preliminary to genuinely reflect reasonable estimates of the cost to be incurred by the City as a result of new development.[1] (Doc. 81 at 13).

Plaintiffs filed their Class Action Complaint against the City in February 2022, asserting five claims for relief based on the three theories identified above. (Doc. 1). Plaintiffs bring a federal constitutional claim under 42 U.S.C. § 1983, alleging the impact fees imposed by the City pursuant to the Resolutions are unlawful takings in violation of the Fifth Amendment to the United States Constitution (Count I). Plaintiffs also assert state law claims against the City for negligence per se (Count II), negligence (Count III), and negligent misrepresentation (Count IV). (Doc. 1). Plaintiffs seek declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq. (Count V), including declarations that the City's impact fee Resolutions are unlawful and should be set aside, and that Plaintiffs are entitled to refunds of any money paid in impact fees in

---

[1] In a one-sentence subsection of the Complaint titled "Charges on Developments Not Increasing Service Demand on Public Facilities," Plaintiffs allege that since adopting the Resolutions, the City has charged impact fees for new development, remodels, and renovations that did not involve any increase in fixture units or any other aspect of development that would impact service demand on public water and wastewater facilities. (Doc. 1 at ¶ 35). For present purposes, the Court assumes this allegation is related to, and subsumed within, the three theories identified above.

excess of those permitted under the United States Constitution and Montana law. (Doc. 1, ¶¶ 81–83). Plaintiffs specifically request "[c]ompensation for the unlawful, unconstitutional, and improper impact fees" they and the putative class members have paid to the City. (Doc. 1 at 27).

In November 2022, Plaintiffs filed the pending motion for class certification, asking the Court to (1) certify this matter as a class action; (2) define the class; (3) define the class claims and issues; and (4) appoint counsel of record for Plaintiffs as class counsel. (Doc. 39). Approximately one month later, in December 2022, the City filed a Third-Party Complaint against FCS Group (Doc. 47), asserting that if the City is liable to Plaintiffs, FCS Group is liable to the City for breach of contract, indemnity, and/or contribution for its work reviewing and updating the City's impact fee rates under a December 2017 contract between FCS Group and the City. (Doc. 47, at 4). The Court temporarily stayed briefing on Plaintiffs' motion for class certification to give FCS Group the opportunity to respond. (Doc. 51). The motion for class certification is now fully briefed, and the Court heard oral argument on August 23, 2023.

## II.   __Legal Standard__

Class certification is governed by Federal Rule of Civil Procedure 23. A plaintiff seeking class certification must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  A

plaintiff must also satisfy one of the three subsections of Rule 23(b), which

requires a showing that: (1) prosecuting separate actions would create a risk of

prejudice; (2) declaratory or injunctive relief is appropriate as to the class; or (3)

common questions of law or fact predominate over individual issues and a class

action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(1)-(3);

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). "Failure to

meet any one of the requirements of Rule 23 results in denial of class

certification." *Carlstrom v. DecisionOne Corp.*, 217 F.R.D. 514, 516 (D. Mont.

2003).

Rule 23 "does not set forth a mere pleading standard." *Dukes*, 564 U.S. at

350. A plaintiff must "affirmatively demonstrate" that the rule's requirements are

met. *Dukes*, 564 U.S. at 350. Therefore, a court cannot accept the allegations in the

pleadings as true; a plaintiff must establish "that the prerequisites of Rule 23 are

satisfied by a preponderance of the evidence." *Olean Wholesale Grocery*

*Cooperative, Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

See also *Dukes*, 564 U.S. at 350; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

984 (9th Cir. 2011) (finding the district court applied "impermissible legal criteria"

by accepting the allegations in the complaint as true, rather than "resolving the

critical factual disputes" overlapping with the Rule 23(a) requirements).

III.   **Discussion**

Plaintiffs move the Court to certify a class consisting of "[a]ny and all persons or entities who paid impact fees for water and wastewater services to [the City] from January 1, 2019 to the present." (Doc. 39 at 2). Plaintiffs ask the Court to define the class claims and issues as follows: "Any and all claims advanced in Plaintiffs' Complaint involving the City's allegedly unlawful assessment of impact fees for water and wastewater services from January 1, 2019 to the present." (Doc. 39 at 2). Plaintiffs argue the proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements imposed by Rule 23(a), and the criteria enumerated in Rule 23(b)(3).

The City and FCS Group disagree that the Requirements of Rule 23(a) and (b)(3) are satisfied, and the City argues as a threshold matter that the Court should deny class certification because the named Plaintiffs and many of the proposed class members lack standing.[2]

A.    **Article III Standing: Named Plaintiffs**

Under Article III, § 2 of the United States Constitution, the subject matter jurisdiction of the federal court is limited to "actual cases or controversies."

---

[2] With the exception of the City's standing argument, the City and FCS Group advance essentially the same arguments in opposition to class certification. For simplicity's sake, the Court refers to the two entities collectively as "the City" unless stated otherwise.

*Raines v. Byrd*, 521 U.S. 811, 818 (1997). One essential part of the "case or controversy requirement is that the plaintiffs have standing to assert their claims." *Western Mining Council v. Watt*, 643 F.2d 618, 623 (9th Cir. 1981). To establish standing, plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legal protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). "To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision.'" *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (citation omitted). Plaintiffs bear the burden of establishing subject matter jurisdiction, including that all elements of Article III standing are satisfied. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

"[T]o establish Article III standing in a class action, at least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a claim against that defendant." *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544  (D. Nev. 2004); *See*

*also In re Ditropan XL Antitrust Litigation*, 529 F.Supp.2d 1098, 1107 (N.D. Cal. 2007) ("[A]t least one named plaintiff must have standing with respect to each claim the class representative seeks to bring.").

While every class member also must have Article III standing to recover individual damages, the United States Supreme Court has "expressly held open the question 'whether every class member must demonstrate standing before a court certifies a class.'" *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 n. 4 (2021)). *Olean* made clear that at the certification stage, the district court need only determine that the evidence is "capable of showing" the class members suffered harm on a class-wide basis. *Olean*, 31 F.4th at 681.

To the extent the City relies on *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) for the proposition that "[n]o class may be certified that contains members lacking Article III standing," the Ninth Circuit has since clarified that this statement from *Mazza* "signifies only that it must be possible that class members have suffered injury, not that they did suffer injury, or that they must prove such injury at the certification phase." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1137 n. 6 (9th Cir. 2016). It is not necessary for each class member to submit evidence of personal standing; rather, "the class must … be defined in

such a way that anyone within it would have standing." *Torres*, 835 F.3d at 1137 n. 6 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). Thus, for class certification purposes, Rule 23 requires a district court to determine whether individualized inquiries into the issue of standing would predominate over common questions. *Olean*, 34 F.4th at 668 n. 12.

The City argues Plaintiffs' request for class certification is fundamentally flawed because they cannot show that they and all members of the putative class have standing to pursue their claims. (Doc. 75 at 11). Because at least one of the named Plaintiffs must have standing for class certification to be appropriate, the Court begins by considering whether Plaintiffs have adequately demonstrated that at least one of them has standing to pursue the claims asserted against the City.

The City makes two standing-related arguments based on the redressability element of Article III standing. The City's first argument focuses on Plaintiffs' proposed class definition, which identifies a class consisting of "[a]ll persons or entities who paid impact fees" during the relevant period. (Doc. 40 at 7). The City contends that Plaintiffs' list of proposed class members includes several individuals and entities who did not actually pay the impact fees at issue, and so would not be entitled to a refund. According to the City, Plaintiffs have thus misidentified the payors of the impact fees in question and the members of the class they seek to certify. (Doc. 75 at 12). The named Plaintiffs do not fall into this

category because the record reflects that the City has identified each of them as the payor of challenged impact fees. (Doc. 75-3 at 1, 8). Accordingly, as *Olean* instructs, the Court will address this argument and the extent to which individualized inquiries may be necessary to determine whether the putative class members have standing as part of the Rule 23(b)(3) predominance inquiry.

The City's second standing-related challenge focuses on the current ownership status of the properties for which impact fees were paid. The City argues that under Montana law, only current property owners are entitled to impact fee refunds. The City has submitted evidence that two named Plaintiffs -- Jeff Beck and Alta Views -- along with approximately half of the individuals and entities on Plaintiffs' proposed class list, no longer own the properties for which impact fees were paid. (Doc. 75-3). Because Beck, Alta Views, and many of the class members do not currently own the properties for which impact fees were paid, the City maintains, they are not entitled to impact fee refunds under Montana law and a favorable decision would not redress their claimed injuries as required for them to have Article III standing.[3]

---

[3] As to the Weinbergs, the record reflects that the properties for which impact fees were paid were, and still are, owned by the Zac Weinberg and Amy Weinberg Living Trust. (Doc. 40-3 at 22; Doc. 75-7). While the ownership of those properties has not changed hands since the challenged impact fees were paid, the Living Trust is identified as the property owner. Whether the Weinbergs have standing to challenge fees paid by the Living Trust, or whether the Living Trust should be substituted as a named Plaintiff in their stead, has not been adequately

The City relies on Montana's impact fee refund statute, § 7-6-1603, which provides in relevant part that if "impact fees are not collected or spent in accordance with the impact fee ordinance or resolution or in accordance with 7-6-1602, any impact fees that were collected must be refunded to the person who owned the property at the time that the refund was due." Mont. Code Ann. § 7-6-1603(1)(c). The City asserts that under this statute, any refunds the Court might determine are due must be paid to the current owners of the properties for which impact fees were paid, regardless of whether they owned the properties at the time the impact fees were paid. Because Beck, Alta Views, and many of the putative class members are not current owners, the City argues that even if they prevail on the merits, they would not be entitled to refunds under Montana law.

Plaintiffs' response is twofold. First, Plaintiffs take the position that § 1603(1)(c) is irrelevant to the issue of standing because they and the class members do not need to be eligible for a refund under state law to recover damages for an unconstitutional Fifth Amendment taking. Second, even if § 1603(1)(c) does apply, Plaintiffs disagree with the City's reading of the statute and argue it can reasonably

---

briefed or argued by the parties. But because the two other named Plaintiffs – Beck and Alta Views - have adequately demonstrated standing for the reasons discussed herein, the Court need not address these issues now.

be read as requiring that refunds be paid to the person or entity who owned the property at the time the impact fees were unlawfully collected.

Plaintiffs' first argument relies on *Knick v. Township of Scott, Pa.,* 139 S.Ct. 2162, 2170 (2019), which held that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it," and "may bring his claim in federal court under § 1983 at that time." *Knick,* 139 S.Ct. at 2167-68. *Knick* made clear that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner" under state law. *Knick*, 139 S.Ct. at 2170. *Knick* explains that "[t]he availability of any particular compensation remedy" under state law "cannot infringe or restrict the property owner's federal constitutional claim." *Knick*, 139 S.Ct. at 2171. Due to "the 'self-executing character' of the Takings Clause 'with respect to compensation,'" *Knick* reaffirmed that "a property owner has a constitutional claim for just compensation at the time of the taking." *Knick*, 139 S.Ct. at 2171 (citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987)).

Because a takings violation may be "remedied by money damages" obtained under § 1983 and "is complete at the time of the taking," regardless of any "subsequent state action," the putative class members do not need to be eligible for a refund from the City under § 1603(1)(c) to recover damages for an

unconstitutional taking. *Knick*, 139 S.Ct. at 2177. To conclude otherwise, and hold that any property owner who bore the cost of impact fees imposed by the City pursuant to the challenged Resolutions must be eligible for a refund under state law to recover damages, would impermissibly infringe and restrict the property owner's federal constitutional takings claim. Having determined that § 1603(c) does not apply, the Court need not address Plaintiffs' second argument that the statute can reasonably be read as requiring the City to pay refunds to the person or entity who owned the property at the time impact fees were unlawfully collected.

Even assuming § 1603 does not apply, the City contends that Beck, Alta Views, and any class members who are not current property owners nevertheless lack standing because they have presumably passed the cost of their impact fees on to subsequent purchasers. The City does little to develop this pass-on argument, other than to cite *Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439 (Ill. 2004) for the general proposition that property owners who have passed the cost of impact fees to subsequent purchasers lack standing to seek a refund because they have already been compensated for their alleged injuries. (Doc. 75 at 37-38).

In *Raintree Homes*, two developers brought suit against a municipality seeking a declaratory judgment as to the validity of a municipal ordinance requiring the payment of impact fees as a condition of obtaining a building permit, and seeking an impact fee refund. *Raintree Homes*, 807 N.E.2d at 441. Because

the undisputed evidence demonstrated that the plaintiffs had passed the cost of their impact fees on to the lot owners by increasing the purchase contract price by several thousand dollars, the court concluded that the plaintiffs did not have standing to assert a cause of action based on payment of the impact fees. *Raintree Homes,* 807 N.E.2d at 447-48.

Here, unlike *Raintree Homes*, there is no evidence in the record to suggest that Beck, Alta Views, or any class members passed the cost of the challenged impact fees on to subsequent purchasers. At oral argument, the City referred to competing expert disclosures addressing whether impact fees are typically passed on to subsequent purchasers, but that evidence is not presently before the Court. For purposes of demonstrating standing at the class certification stage, Plaintiffs need not refute the City's pass-on argument by proving a negative, namely that they and any class members who are not current owners did not pass the cost of impact fees on to subsequent purchasers.

Additionally, while Plaintiffs have the ultimate burden of demonstrating standing, it is not clear based on the current record whether the City's pass-on argument provides a legally viable basis upon which to challenge the standing of Plaintiffs and class members who are not current property owners. *Raintree Homes*, a 2004 decision by the Supreme Court of Illinois, was decided long before *Knick*, which held that a property owner has a constitutional claim for just

compensation at the time of the taking and may bring a Fifth Amendment claim under § 1983 at that time. *Knick*, 139 S.Ct. 2167-68, 2171. Based on the current record, and in light of *Knick*, the Court cannot say as a matter of law that the City's pass-on argument necessarily goes to the issue of standing.

For these reasons, the Court concludes that for class certification purposes, named Plaintiffs Beck and Alta Views have adequately demonstrated that they have standing to pursue their claims against the City. To the extent the City's standing-related arguments apply to the putative class members, the arguments are properly addressed under the Rule 23 criteria, including particularly predominance.

Accordingly, the Court will start its Rule 23 analysis by addressing commonality under Rule 23(a) together with predominance under Rule 23(b)(3). See e.g. *Johnson v. R&L Carriers Shared Service, LLC*, 2023 WL 3299709, at *2 (C.D. Cal. Apr. 10, 2023) (recognizing that Rule 23(a)'s commonality requirement is subsumed within Rule 23(b)(3)'s more stringent predominance requirement, and addressing the two requirements together). The Court will then address the remaining factors under Rule 23(a) and 23(b)(3) – numerosity, typicality, adequacy, and superiority.

## B.    Commonality and Predominance

To establish commonality under Rule 23(a), Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Commonality is met through the existence of the "same injury" resulting in a "common contention" that is "capable of classwide resolution … in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification … is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

To establish predominance under Rule 23(b)(3), Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4ᵗʰ 1134, 1138 (9th Cir. 2022) (quoting *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). The predominance inquiry is more stringent than the permissive commonality requirement of Rule 23(a)(2). See *Alexander v. JBC Legal Group, P.C.*, 237 F.R.D. 628, 632 (D. Mont. 2006) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The "analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon v. Chyrsler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Predominance requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Lara*, 25 F.4th at 1138. An "individual question" is one "where members of a proposed class will need to present evidence that varies from member to member." *Lara*, 25 F.4th at 1138. The predominance inquiry begins with the elements of the underlying claims. See *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 629 (9th Cir. 2020). "[I]f the main issues in the case require the separate adjudication of each class member's individual claim or defense," class certification under Rule 23(b)(3) is not appropriate. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

The Ninth Circuit has held that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). But "to establish predominance, the named plaintiff must put forward a damages model establishing that 'damages are capable of measurement on a classwide basis'." *Siino v. Foresters Life Insurance and Annuity Co.*, 340 F.R.D. 157, 163 (N.D. Cal. Jan. 12, 2022) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). If there is no appropriate methodology for calculating damages on a class wide basis, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," making Rule 23(b)(3) certification inappropriate. *Comcast Corp.* 569 U.S. at 33-35

(finding predominance not met where questions of individual damage calculations would inevitably overwhelm questions common to the class).

Here, the Court finds Plaintiffs have met their initial burden of establishing that the permissive commonality prerequisite of Rule 23(a) is satisfied. While Plaintiffs acknowledge the City charges impact fees based on a number of different factors specific to individual developments, they contend the City has employed a uniform, non-discretionary method of calculating water and wastewater impact fees. Plaintiffs' report-based and project-based theories of liability are common to all putative class members seeking to challenge the City's impact fees. Whether the City has been charging building permit applicants unlawful impact fees pursuant to the Resolutions since January 1, 2019 presents a common legal question that is central to the putative class members' federal constitutional and state law claims, and can be answered on a class wide basis.

Plaintiffs argue this common question drives the resolution of their claims, and they have thus carried their burden of proving that questions common to the entire class predominate over individual questions. (Doc. 40 at 21). The City counters that notwithstanding the overarching theory of the case, there are several individualized standing-related and other issues that will have to be adjudicated, thereby defeating predominance.

1.   *Article III Standing: Putative Class Members*

As explained above, the City's first standing-related argument focuses on the proposed class definition, which identifies a class consisting of "[a]ll persons or entities who paid impact fees for water and wastewater services" during the relevant period. (Doc. 40 at 7). As the City accurately points out, however, Plaintiffs' list of proposed class members does not identify the individuals or entities who actually paid the impact fees in question, but rather who owned the properties when the impact fees were paid. (Doc. 40-3). The City has submitted evidence that in many instances, the impact fees were not paid by the property owner, but by "designers, architects, general contractors, tenants, or other individuals or entities with an unknown connection to the owner listed on the building permit." (Doc. 75 at 12, citing Doc. 75-3). The City contends that Plaintiffs have thus misidentified the members of the class they seek to certify, which is defined to include only those persons or entities who paid impact fees.

Plaintiffs concede that some impact fees may have been delivered to the City by third parties on behalf of property owners, but explain that the proposed class is meant to encompass any property owner who actually bore the cost of improperly assessed impact fees, regardless of whether the fees were transmitted by a third party. (Doc. 81 at 5-6). Plaintiffs suggest that the City's concerns on this point can be addressed by modifying the class definition to include "all persons or entities who owned properties for which they *bore the cost of* impact fees to the City for

water or wastewater services under rates effective January 1, 2019, to the present"
instead of those who *paid* impact fees. (Doc. 81 at 6) (italics added).

At oral argument, the City took the position that even if the class definition
is modified as Plaintiffs suggest, individualized inquiries would be needed to
determine whether any property owners who are not identified in City records as
the payor of the challenged impact fees nevertheless bore the cost of those fees as
required to have standing. The City has identified more than 550 building permits
that were issued during the relevant period for which water and wastewater impact
fees were paid, and has identified someone other than the property owner as the
payor in roughly 95 cases. (Doc. 75-3).

As Plaintiffs suggested during oral argument, whether those property owners
who are not identified as the payor nevertheless bore the cost of the challenged
impact fees, thereby bringing them within the class definition, can be established
by way of supplemental discovery responses providing proof of payment, and/or
addressed during the class notification process. For class certification purposes,
Plaintiffs need not submit evidence that all class members bore the cost of the
challenged impact fees as required for them to have Article III standing. See
*Torres*, 835 F.3d at 1137 n. 6. To the extent individualized inquiries may later be
necessary to make that determination, such inquiries will not predominate over
issues common to the whole class. See e.g. *Weiner v. Ocwen Financial Corp.*, 343

F.R.D. 628 (E.D. Cal. 2023) (finding individualized inquiries into standing, including whether all class members actually paid the fees in question, did not predominate over common questions).

As discussed above, the City's second standing-related challenge focuses on the current ownership status of the properties for which impact fees were paid. The City has submitted evidence that approximately half of the individuals and entities on Plaintiffs' proposed class list no longer own the properties for which impact fees were paid. (Doc. 75-3). Again, the City takes the position that only current property owners are entitled to impact fee refunds under Montana's impact fee refund statute, Mont. Code Ann. § 7-6-1603. Because many of the class members are not current property owners, the City contends, they are not entitled to impact fee refunds and a favorable decision would not redress their claimed injuries as required for them to have Article III standing.

For the reasons stated above, however, the Court has concluded that § 1603 does not apply to Plaintiffs' takings claim. Regardless of whether § 1603 applies, the City further argues that individualized inquiries into whether any class members who are not current property owners can establish the redressability element of standing will predominate over common questions. Specifically, the City contends that individualized inquiries will be needed to determine whether

any class members who are not current property owners passed the cost of their impact fees on to subsequent purchasers, thereby depriving them of standing.

Even assuming, without deciding, that the City's pass-on theory provides a viable basis for challenging the standing of class members who are not current owners, it is not at all clear that determining whether those class members passed the cost of the City's impact fees on to subsequent purchasers would require individualized inquiries, or could even be subject to individualized proof. Rather, as the City's reference to competing expert disclosures on the topic suggests, whether water and wastewater impact fees are indivisible from a property's purchase price, and are passed on or not as a matter of course to subsequent purchasers, is likely subject to class-wide proof. To the extent any individualized inquiries into whether some of the putative class members who are not current owners passed the cost of impact fees on to subsequent purchasers may later be necessary, the Court is satisfied that those inquiries will not predominate over the common questions of law and fact that are central to Plaintiffs' claims.

For the reasons set forth above, the Court rejects the City's argument that individualized standing-related inquiries are sufficient defeat the predominance requirement of Rule 23(b)(3). As the predominance inquiry requires, the Court turns next to the elements of Plaintiffs' claims, and considers whether the evidence necessary to prove those elements will vary from class member to class member.

See *Walker*, 953 F.3d at 629 (the predominance inquiry begins with the elements of the underlying claims).

2.     *Takings Claim*

Plaintiffs' takings claim alleges that, in conditioning grants of building permits on the payment of excessive impact fees grossly disproportionate to the actual impact of proposed developments, the City has subjected them and the putative class members to deprivations of their rights under the Fifth Amendment. (Doc. 1, ¶ 54). Plaintiffs' overarching theory is that the City's method for calculating impact fees, as implemented in the Resolutions, constitutes a Fifth Amendment taking under the *Nollan/Dolan* "essential nexus" and "rough proportionality" standard.[4]

Under the *Nollan/Dolan* "essential nexus" and "rough proportionality" standard, the government "may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 599 (2013). To assess "rough proportionality," the government must "make some sort of individualized determination that the required dedication is

---

[4] Plaintiffs do not assert a regulatory takings claim under *Penn Central Transp Co. v. City of New York*, 438 U.S. 104 (1978).

related both in nature and extent to the impact of the proposed development." *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). Likewise, the court's task in applying *Nollan/Dolan* "is to make fact-specific inquiries into the nexus and rough proportionality between a particular exaction and the impact of a specific use of land." *Koontz Coalition v. City of Seattle*, 2014 WL 5384434, at *4 (W.D. Wash. Oct. 20, 2014).

Until recently, the Ninth Circuit followed the view that the *Nollan/Dolan* standard applies only to adjudicative land-use exactions, as opposed to legislative, generally applicable land-use exactions. See *McClung v. City of Sumner*, 548 F.3d 1219, 1225, 1228 (9th Cir. 2008). The Ninth Circuit changed course in *Ballinger v. City of Oakland*, 24 F.4th 1287, 1299 (9th Cir. 2022), concluding that "any government action, including administrative and legislative, that conditionally grants a benefit, such as a permit, can supply the basis for an exaction claim" that is subject to the *Nollan/Dolan* analytical framework. *Ballinger* explains "that what matters for purpose of *Nollan* and *Dolan* is not *who* imposes the exaction, but *what* the exaction does, and the fact that the payment requirement comes from a city ordinance, is irrelevant." *Ballinger*, 24 F.4th at 1299. Consistent with *Ballinger*, Plaintiffs claim that the City's Resolutions effect an unconstitutional exaction under *Nollan* and *Dolan*.

The City argues that application of the *Nollan/Dolan* "essential nexus" and "rough proportionality" standard will necessarily involve fact-specific individualized inquiries, thereby defeating predominance. Specifically, at oral argument, the City took the position that it will be necessary to individually consider the nexus and rough proportionality between the amount of impact fees borne by each class member and the impact of the proposed development of each class member's property, including the size of the property and the number of water fixtures installed. As to Plaintiffs' project-based theory, the City further argues that multiple individualized inquiries will be necessary, including the timing of each class member's payment of impact fees, which projects impacted the City's impact fee calculations for each class member, whether the City had already decided not to pursue the project as of the date the impact fee was charged, the location of the property and whether it benefitted from each of the projects for which impact fees were charged, and how the projects affected the fees charged to each class member.

But given the facial nature of Plaintiffs' takings challenge, the Court finds the City's arguments on this point unpersuasive. As summarized above, Plaintiffs' report-based theory alleges that the City misapplied maximum impact fee recommendations in two third-party reports, and as a result, the Resolutions implement a collections method that is inconsistent with the evidence and exceeds

the actual impacts of new development. Plaintiffs' project-based theory in turn alleges the City unlawfully included the anticipated cost of three water and wastewater related projects in calculating the impact fee rates implemented by Resolution 19-15, and that as a result, those rates exceed the actual impacts of new development. Both of these theories advance what amounts to a facial challenge to the Resolutions. *See Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (a facial challenge is a claim that alleges there is "no set of circumstances" under which the challenged statute would be valid).

Consistent with the substantive allegations of the Complaint, Plaintiffs assert that "[a]lthough the City charges fees based on an number of different factors specific to individual developments, it has, under both Resolutions, employed a uniform, non-discretionary method in calculating water and wastewater impact fees." (Doc. 40 at 16). The City has described its method for calculating impact fees in much the same way, stating in support of its unsuccessful motion for judgment on the pleadings that "the impact fees derive from legislative ordinances that apply broadly to the general public in seeking to develop their property. … [Impact fees] are uniformly calculated based on a preset framework specified in the ordinances and Resolutions, rather than discretionary decisions for individual landowners." (Doc. 27 at 9).

Plaintiffs take the position that the uniform method the City uses to calculate water and wastewater impact fees has been unlawful since the Resolutions first went into effect, and in doing so are claiming that the Resolutions facially effect a Fifth Amendment taking. Because Plaintiffs advance a facial challenge to the Resolutions, the individualized issues identified by the City are largely immaterial. If, for example, Plaintiffs prevail on their theory that the City unlawfully included the anticipated cost of certain projects when it enacted Resolution 19-15, it would not be necessary to determine whether the class members paid their impact fees before or after those projects later were abandoned or modified. While evidence that the City abandoned or modified those projects may be relevant to Plaintiffs' argument that the cost of the projects never should have been included in the first place, this presents an issue that is common to the class.

To the extent Plaintiffs' takings claim advances a facial challenge to the Resolutions, the Court is thus satisfied that application of the *Nollan/Dolan* standard will not raise significant individual issues that might predominate over issues common to the class. See *Levin v. City and County of San Francisco,* 71 F.Supp.3d 1072 (N.C. Cal. 2014) (applying *Nollan/Dolan* to a facial challenge to a city ordinance that allegedly effected a Fifth Amendment taking by requiring property owners seeking to withdraw their rent-controlled property from the rental market to pay a lump sum to displaced tenants).

Unlike the two theories addressed above, Plaintiffs' improper fixture unit weighting theory does not advance a facial challenge to Resolutions, but rather raises what amounts to an as-applied challenge. See *Rodriguez Diaz,* 53 F.4th at 1203 (an as-applied challenges focuses on a statute's application to the plaintiff and requires the court to assess the circumstances of the case at hand). Specifically, this theory challenges the City's method of calculating the number of water fixtures that were part of each class member's proposed development or remodel. Plaintiffs assert the City systematically assigns certain water fixtures into higher weighted and more costly water fixture categories than what is specified by the UPC. (Doc. 1 at ¶ 21-24). Plaintiffs' fixture unit weighting theory is thus different from the other two in that it does not claim the Resolutions and the impact fees they implemented are necessarily unlawful, but rather that the City made mistakes when calculating the number of water fixtures called for in each class member's building plans.

The City has acknowledged an error in the fixture count used to calculate water and wastewater impact fees. (Doc. 1 at ¶ 25; Doc. 20 at 3). The City concedes that it erroneously counted 4 fixture units for all bathtubs and showers, without separating single-head standalone showers which should be assigned 2 fixture units. (Doc. 119-1 at ¶ 2). Because the City has essentially admitted liability on this theory, all that remains is the issue of damages.

As required to establish predominance, Plaintiffs have put forward a damages model demonstrating that "damages are capable of measurement on a class wide basis" if they prevail on their takings claim. *Siino*, 340 F.R.D. at 163. Plaintiffs propose that if they prevail on the merits, each class member's damages would be measurable as the difference between what they actually paid in impact fees and what the City could lawfully have charged. (Doc. 81 at 27). Plaintiffs submit that, once impact fee rates complying with *Nollan/Dolan*'s essential nexus and rough proportionality standards have been determined, lawful impact fee charges for each class member could be calculated using the building plans submitted to the City as part of the development process, which would permit an accurate fixture unit count. Plaintiffs have thus proffered a common methodology for calculating damages.

The City does not refute the notion that it would be possible to arrive at an accurate fixture unit count based on the building plans presumably within its possession, but argues individual questions of damages will predominate because it will be necessary for the City to individually inspect each property to determine whether the affected class members are entitled to a refund. (Doc. 75 at 36). Before this lawsuit was even filed, the City began the process of conducting an internal

audit to identify affected properties and determine the amount of any refunds due.[5]

(Doc. 119-1). The City explains that it has since inspected more than 100

properties "to determine if the single-head standalone shower error applied and, if

so to recalculate impact fees based on the current fixture counts." (Doc. 119-1 at ¶

9). According to the City, several property owners installed additional fixtures,

resulting in higher fixture unit counts than previously reported, and as a result

several property owners "underpaid the City even after correction of the single-

head standalone shower error, such that they are not owed a refund and, in fact,

would otherwise owe the City additional impact fees." (Doc 119-1 at ¶ 11). The

City submits that for other properties with higher fixture counts than those

previously reported even after correcting the single-head standalone shower error,

any refunds due should be reduced based on the additional fixtures. (Doc. 119-1 at

¶ 11). The City thus takes the position that "determining the extent to which a

given class member is entitled to a refund, if any, would require individualized

inspections of each property to determine whether fixtures were installed without

being reported, and the extent to which that offsets [any] refund owed," thereby

defeating predominance. (Doc. 75 at 36).

---

[5] To support this argument the City has submitted a declaration by Rose Elliott, the Utility Service Supervisor of the City of Whitefish. (Doc. 119-1). Because the City filed the declaration the day before oral argument, Plaintiffs asked the Court not to consider it. But even considering Elliott's declaration, the Court concludes for the reasons explained herein that Plaintiffs have demonstrated predominance.

The Ninth Circuit has repeatedly confirmed "that the need for individualized findings as to the amount of damages does not defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.* 824 F.3d 1150, 155 (9th Cir. 2016). Damage offset amounts that are capable of calculation based on a common methodology do not defeat predominance. *See e.g. Munguia-Brown v. Equity Residential*, 2023 WL 1868875, at *1 (N.D. Cal. Jan. 24, 2023).

The City's damages offset argument necessarily applies only to those putative class members who are current property owners. It would serve no purpose to inspect properties that are no longer owned by putative class members because any additional fixtures could have been installed by subsequent property owners. The City's argument that individualized issues as to damages offset amounts defeat predominance is unpersuasive for two reasons.

First, like the City's pass-on theory, it is not clear based on the current record whether the City's damages offset theory is legally viable in light of *Knick*, which held that a property owner has a constitutional claim for just compensation at the time of the taking and may bring a Fifth Amendment claim under § 1983 at that time. *Knick*, 139 S.Ct. at 2167-68, 2171. In light of *Knick*, the City has not demonstrated that it would be entitled to an offset against a takings damages award based on additional fixtures that were installed after the time of the taking, and

which may have been installed by subsequent property owners who are not class members.

Second, the City has not shown that its damages offset theory is viable on the facts of this case. Following completion of a permitted development, remodel, or renovation, the City has the authority to conduct a property inspection and issue a certificate of occupancy when the applicable requirements are satisfied. *See generally* Mont. Code Ann. § 50-60-106(2)(e), § 50-60-107. The City provides no reason why it could not have inspected each property before issuing a certificate of occupancy to determine whether the property owner installed additional water unit fixtures not reported to the City. That the property owner may have installed additional fixtures after the City issued a certificate of occupancy may well raise enforcement issues for the City, but the City has not shown that it provides a basis for offsetting any damages that may be awarded on the class members' takings claims.

For present purposes, Plaintiffs have identified a viable methodology for calculating damages on a class-wide basis. Accordingly, and for the reasons outlined above, Plaintiffs have demonstrated predominance as to their Fifth Amendment takings claim.

3.    *Negligence  Claims*

Plaintiffs' claims for negligent misrepresentation, negligence, and negligence per se are all premised on the same set of operative facts and same development approval process that provide the basis for their Fifth Amendment takings claim.

Plaintiffs' negligent misrepresentation claim alleges the City misrepresented that it had the "authority to charge impact fees at the rates charged," that it did not have any reasonable ground for believing its representation to be true, and that it made the representation with the intent to induce reliance. Plaintiffs assert they and the other putative class members were unaware of the falsity of the representation, justifiably relied on it, and were damaged as a result. (Doc. 1 at ¶¶ 73-79).

As Plaintiffs explain it, their position is that the City uniformly misrepresented to all class members that it had the authority to prevent a proposed development if the applicant did not pay the required fees. Citing the evidentiary presumption that an "[o]fficial duty has been regularly performed," Mont. Code Ann. § 26-1-602(5), Plaintiffs claim they were entitled to presume the City's impact fee rates were legal, and the fact that the class members actually paid the impact fees shows they justifiably relied on the City's representation. (Doc. 81 at 23).

The Court agrees with Plaintiffs that these issues, including whether the City uniformly misrepresented that it had the authority to impose impact fees at the

rates charged, and whether Plaintiffs were uniformly entitled to and did in fact rely on the alleged misrepresentation, are capable of resolution on a class-wide basis.

Plaintiffs' negligence and negligence per se claims also raise issues that are common to the class. Plaintiffs' negligence claim alleges that in undertaking to impose impact fees, the City assumed a duty to do so reasonably and in accordance with Montana law, and that it breached this duty "by calculating, imposing, and enforcing excessive, unlawful, and unconstitutional impact fee rates." (Doc. at ¶¶ 68-71). Finally, Plaintiffs allege the City committed negligence per se by breaching the statutory duties established in Montana's statutes governing the calculation, collection, expenditure, and refund of impact fees. (Doc. 1 at ¶¶ 57-67, citing Mont. Code Ann. § 7-6-1602, § 7-6-1603).

Again, these theories of liability are based on the same operative facts and raise issues that are common to the class that can be proven with common evidence and which predominate over individualized issues. Whether these various negligence claims are viable, and whether they can survive summary judgment, remains to be seen. But for class certification purposes, Plaintiffs have demonstrated that common issues predominate over any individual issues.

## C.    Typicality

"The typicality requirement assures that the interests of the named representative align with the interests of the class." *Carlstrom v. DecisionOne*

*Corp.,* 217 F.R.D. 514, 516 (D. Mont. 2003) (citing *Hanon v. Dataproducts Corp.*,

976 F.2d 497, 508 (9th Cir. 1992)). "Rule 23(a) is 'permissive' and requires

nothing more than that a class plaintiffs' claims be 'reasonably coextensive with

those of absent class members.'" *Gonzalez v. United States Immigration &*

*Customs Enforcement*, 975 F.3d 788, 809 (9th Cir. 2020) (quoting *Hanon,* 976

F.2d at 508)). *See also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)

(explaining that a named plaintiff's "representative claims are typical if they are

reasonably co-extensive with those of the absent class members; they need not be

substantially identical"). "The test of typicality 'is whether other members have the

same or similar injury, whether the action is based on conduct which is not unique

to the named plaintiffs, and whether other class members have been injured by the

same course of conduct.'" *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108

F.R.D. 279, 282 (C.D. Cal. 1985)).

To establish typicality, a plaintiff must show that "the claims or defenses of

the representative parties are typical of the claims or defenses of the class." Fed. R.

Civ. P. 23(a)(3). If the proposed class representatives are "subject to unique

defenses which threaten to become the focus of the litigation," the typicality

requirement is not satisfied. *Hanon*, 976 F.2d at 508. *See also Carlstrom,* 217

F.R.D. at 516 ("The typicality requirement is not met if the proposed class

representative is subject to unique defenses.").

Plaintiffs argue their claims are reasonably coextensive with those of the putative class because they are all based on the theory that the City has been charging building permit applicants unlawful water and wastewater impact fees pursuant to the Resolutions since January 1, 2019. The City counters that the typicality requirement is not met because the named Plaintiffs do not currently own the properties for which impact fees were paid and are therefore subject to the City's standing defense. As addressed above, the Court has rejected the City's argument that individualized standing-related inquiries are sufficient to defeat predominance. The City's standing argument fails to defeat typicality for the essentially the same reasons. In addition, because approximately half of the putative class members are not current property owners, the City's standing defense is not unique to the named Plaintiffs.

To the extent Plaintiffs' claims are based on their improper fixture unit weighting theory, the City argues their claims are not typical of the class because two named Plaintiffs – the Weinbergs – installed additional fixtures that were not disclosed on their building plans, which according to the City means they are not entitled to a refund. This argument essentially reiterates the City's damages offset argument, and it fails to defeat typicality for the same reasons it fails to undermine predominance.

The City further argues the Plaintiffs' claims are not typical of the class because they are barred by the six month statute of limitations for claims "against a municipality arising from a decision of the municipality relating to land use, construction, or development." Mont. Code Ann. § 27-2-209(5). Ordinarily, the statute of limitations for § 1983 claims in Montana is three years. See *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). State law claims for negligence, negligent misrepresentation, and negligence per se are also subject to a three-year statute of limitations under Montana law. See Mont. Code Ann. § 27-2-204; *Hein v. Scott*, 353 P.3d 494, 497 (Mont. 2015). Notwithstanding the general rule, the City asserts that because Plaintiffs' claims challenge the imposition of impact fees, which is a land use decision, the shorter statute of limitations under § 27-2-209 controls and any claims based on impact fees paid before August 24, 2021 are time barred. Because the class list submitted by Plaintiffs reflects that Alta Views, Beck, and the Weinbergs all paid impact fees before August 24, 2021 (Doc. 40-3 at 3, 23, 24), the City takes the position that their claims are barred by the six-month statute of limitations applicable to land use decisions. The City points out that several of the putative class members paid impact fees after August 24, 2021, and argues typicality is not satisfied because their claims would not be subject to the same statute of limitations defense.

Plaintiffs disagree that six-month statute of limitations applies at all, and argue instead that their claims are subject to the longer three-year statute of limitations. But even assuming the City is correct that the six-month limitations period applies, Plaintiffs contend the limitations period was tolled until September 20, 2021.  According to Plaintiffs, Whitefish citizen Paul Gillman investigated the City's impact fee rates and administration, and discovered that the City's impact fees exceed any development's actual proportionate share of costs for necessary infrastructure improvements. (Doc. 81 at 18, citing 81-1, 81-2). The results of Gillman's investigation were made public during a Whitefish City Council meeting on September 20, 2021. (Doc. 81 at 18, citing 81-1, 81-2). It was at this point, Plaintiffs assert, that they and the putative class members first had reason to question the legality of the City's impact fees and the limitations period began to run. Because they filed this action approximately five months later, on February 24, 2022, Plaintiffs argue their claims are timely regardless of which limitations period applies.

The City's statute of limitations defense raises issues that are common to the class, including which statute of limitations applies, and is not unique to the named Plaintiffs. Like Plaintiffs, the record reflects that the majority of the putative class members paid impact fees before August 24, 2021 and will be subject to the same statute of limitations defense. Plaintiffs' argument that the limitations period was

tolled on a class-wide basis until the Whitefish City Council's meeting on September 20, 2021 applies equally to the putative class members, will not require individualized inquiries, and is not unique to Plaintiffs. Even if some individualized analysis is necessary, Plaintiffs' claims and the City's statute of limitations defense are reasonably co-extensive for purposes of meeting Rule 23(a)'s permissive typicality requirement. Accordingly, the Court finds that typicality is satisfied.

## D.   Adequacy

To establish adequacy, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry presents two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Chief Goes Out v. Missoula County*, 2013 WL 139938, at * 6-7 (D. Mont. Jan. 10, 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiffs assert that the adequacy requirement is satisfied because they do not have any conflicts with other class members, have suffered the same injury as the other class members, and are advancing the same legal interests. The City disagrees, and contends Plaintiffs are not adequate representatives because they are

subject to standing and statute of limitations defenses that are not typical of the class. The City also contends that the named Plaintiffs who no longer own the properties for which impact fees were paid are seeking refunds to the detriment of the current property owners who are not part of the class, but who would be entitled to any refund due under Montana law.

As addressed above, however, the City's arguments do not defeat predominance or typicality. Notwithstanding the City's defenses, the interests of the named Plaintiffs are sufficiently aligned with the interests of the other class members and Plaintiffs do not have any actual conflicts of interest with members of the class. Because the interests of the named Plaintiffs are sufficiently aligned with the other class members and there is no basis to conclude that counsel will not prosecute the action vigorously on behalf of the class, the Court finds the adequacy requirement is satisfied.

### E.     Numerosity

To establish numerosity, Plaintiffs must show that the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). An exact number of members is not required to adequately plead numerosity; a reasonable estimate is sufficient. *Burton v. Mountain West Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 608 (D. Mont. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d. Cir. 1993). Courts often rely on good faith estimates for the purposes

of determining numerosity at the class certification stage. *P.P. v. Compton Unified School* District, 2015 WL 5752770, at *8 (C.D. Cal. Sept. 29, 2015).

Plaintiffs estimate that their proposed class includes more than 350 individuals or entities who have paid water and/or wastewater impact fees imposed and assessed by the City under the Resolutions since January 1, 2019. (Doc. 40 at 13, citing Doc. 40-3). To establish numerosity, Plaintiffs have provided a list identifying the properties for which the City issued building permits during the relevant period, the individuals or entities who owned the properties at the time the permits were issued, and the amount of water and wastewater impact fees paid. (Doc. 40-3). Based on this estimate, Plaintiffs assert that joinder of all putative class members is impractical and the numerosity requirement of Rule 23(a) is satisfied.

The City argues Plaintiffs overestimate the size of the putative class because, assuming they prevail on their standing and statute of limitations defenses, there would not be enough class members to establish numerosity. (Doc. 75 at 43-44). The City takes the position that the claims asserted by all but 87 class members are barred by the six month statute of limitations applicable to actions arising from municipal decisions relating to land use, construction, or development. See Mont. Code Ann. § 27-2-209(5). The City further contends that at least 267 of the 570 properties on the list provided by Plaintiffs are not currently owned by the

individuals or entities identified on the list, which means they are not entitled to an impact fee refund and do not have standing to pursue their claims.[6] (Doc. 75 at 14, citing Doc. 75-3). As the City calculates it, this would leave approximately 60 putative class members – a number the City contends is insufficient to establish numerosity. (Doc. 75 at 44).

Contrary to the City's argument, courts in the Ninth Circuit generally find Rule 23(a)'s numerosity requirement is satisfied when a class contains at least 40 members. *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010) (citing *EEOC v. Kovacevich "5" Farms,* 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007)) See also *Anderson v. Boyne USA, Inc.*, 2023 WL 4235827, at *3 (D. Mont. June 28, 2023); *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *3 (N.D. Cal. Dec. 19, 2022). For present purposes, even assuming the City ultimately prevails on its standing and statute of limitations arguments – which remains to be seen  – Plaintiffs have adequately demonstrated numerosity.

**F.     Superiority**

---

[6] The City also claims that the proffered class include at least eight class members whose impact fees were calculated based ordinances and methodologies in place prior to January 1, 2019, and lists five properties that are owned by the City and should be excluded from the class. (Doc. 75 at 42-43). These particular discrepancies are so minimal as to have no impact on numerosity.

Rule 23(b)(3) also requires the Court to consider whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) identifies four factors that may be relevant to the superiority analysis: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating litigation of the claims in a particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

If the damages allegedly "suffered by each putative class member are not large," the first factor weighs in favor of certification. *Zinser*, 253 F.3d at 1190. But "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior'." *Zinser* 253 F.3d at 1192. See also *Lara v. First National Ins. Co. of America*, 25 F.4th 1134, 1140 (9th Cir. 2022) (finding plaintiffs failed to demonstrate superiority because a class action "would involve adjudicating issues specific to each member's claim," which "would be unmanageable").

Plaintiffs have adequately demonstrated that a class action is superior to all other available methods for resolving this controversy because individual actions

by the many class members would be unreasonably expensive given that the damages allegedly suffered by each putative class member are relatively small; individual actions would create a substantial risk of conflicting decisions; and there are no obvious difficulties in managing Plaintiffs' claims on a class wide basis.

Although there is no related litigation pending, the City contends that granting class certification would create a risk of a litigation outcome in this Court that is inconsistent with the ongoing refund proceedings undertaken by the City in compliance with Mont. Code Ann. § 7-6-1603. While the City has been in the process of conducting an internal audit for some time now, it appears the City has yet to actually issue any refunds. And as discussed above, whether the City's damages offset argument, which relates to the City's internal audit, is legally and factually viable remains to be seen. The fact that the City has initiated an internal audit does not undercut superiority. Having considered the relevant factors, the Court finds Plaintiffs have met their burden of demonstrating superiority.

## V.    <u>Conclusion</u>

For all of the reasons outlined above, the Court concludes that Plaintiffs have met their burden of establishing that the requirements of Rule 23(a) and 23(b)(3) are satisfied. Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Class Certification (Doc. 39) is GRANTED and Plaintiffs' counsel are appointed as class counsel.

The class is defined as follows: All persons or entities who bore the cost of impact fees for water and wastewater services to the City of Whitefish from January 1, 2019 to the present.

The class claims and issues are defined as follows: All claims advanced in Plaintiffs' Complaint involving the City's allegedly unlawful assessment of impact fees for water and wastewater services from January 1, 2019 to the present.

IT FURTHER ORDERED that the jury trial scheduled for January 22, 2024 is VACATED and the following schedule shall govern all further proceedings:

| | |
|---|---|
| Motions Deadline (fully briefed): | March 8, 2024 |
| Motions in Limine Deadline (fully briefed): | May 13, 2024 |
| Attorney Conference to Prepare Final Pretrial Order: | Week of  June 10, 2024 |
| E-file Final Pretrial Order, Proposed Jury Instructions, Proposed Voir Dire Questions, and Trial Briefs and e-mail to kld_propord@mtd.uscourts.gov (Trial Briefs are optional): | June, 20 2024 |
| Notice to Court Reporter of Intent to Use Real-Time: | June 20, 2024 |
| Notice to I.T. Supervisor of Intent to Use CD-ROM or Videoconferencing: | June 20, 2024 |
| Final Pretrial Conference: | June 27, 2024, at 2:30 p.m. |

                                      Missoula, Montana

Jury Trial (7-member jury):              July 8, 2024, at 9:00 a.m.
                                      Missoula, Montana

      All other provisions in the scheduling order entered on June 1, 2022 (Doc.

25) shall remain in place.

        DATED this 29th day of September, 2023.

                                    Kathleen L. DeSoto
                                    United States Magistrate Judge